SLIP OP. 08-119

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE JANE A. RESTANI, CHIEF JUDGE
          THE HONORABLE DONALD C. POGUE, JUDGE
          THE HONORABLE JUDITH M. BARZILAY, JUDGE

```
-----------------------------x
TOTES-ISOTONER CORPORATION,   :
                              :
          Plaintiff,          :
                              :
     v.                       :   Court No. 07-00001
                              :
                              :
UNITED STATES,                :
                              :
          Defendant.          :
-----------------------------x
```

### MEMORANDUM and ORDER

[Parties' cross-motions for reconsideration denied.]

Dated: November 4, 2008

Neville Peterson, LLP (John M. Peterson, Maria E. Celis, Matthew G. Shaw, and Michael T. Cone) for the Plaintiff.

Gregory G. Katsas, Acting Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Reginald T. Blades, Jr.); Aimee Lee and Gardner B. Miller, Attorneys, International Trade Field Office, U.S. Department of Justice, for the Defendant.

**Pogue, Judge:** Totes-Isotoner Corporation ("Totes") alleged in its complaint in this action that the Harmonized Tariff Schedule of the United States ("HTSUS") illegally discriminates on the basis of gender and/or age by setting out different tariff rates for certain "Men's" gloves as opposed to "other" gloves. The court dismissed Totes's complaint in Totes-Isotoner Corp. v. United States, __ CIT __, 569 F. Supp. 2d 1315 (2008) (holding that Totes had standing to

bring, and the court had jurisdiction to hear, Totes's claim, but dismissing for failure to state a claim because the complaint, as pled, did not "show" or allege facts sufficient to ground an inference of discrimination) (hereinafter "the court's July 3 opinion").[1]

Both parties seek reconsideration of the court's July 3 opinion pursuant to USCIT R. 59.[2]  Defendant United States again asks that the court dismiss the matter for lack of jurisdiction, rather than for failure to state a claim.  The government alleges that Totes, prior to instituting its action, failed to exhaust its administrative remedies when it failed to file a protest with the United States Customs Service[3] ("Customs") as necessary to invoke the Court's jurisdiction under 28 U.S.C. § 1581(a).  At the same time, Totes seeks reconsideration of the court's holding that its complaint failed to state a claim.  Citing <u>Berkley v. United States</u>, 287 F.3d 1076 (Fed. Cir. 2002), Totes alleges that the challenged tariff provision is facially discriminatory, and thus

---

[1] Familiarity with the court's July 3 opinion is presumed.

[2] USCIT Rule 59 provides that a "rehearing may be granted . . . for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States."

[3] Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection. <u>See</u> Homeland Security Act of 2002, Pub. L. No. 107-296 § 1502, 2002 U.S.C.C.A.N. (116 Stat.) 2135, 2308; Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. No. 108-32, at 4 (2003).

the court should infer or presume the government's discriminatory intent.  Alternatively, Totes asks the court to certify for interlocutory appeal the question of whether the tariff provision at issue is facially discriminatory.

Because neither motion identifies legal error in the court's July 3 opinion, as explained below, the court denies both motions.

## Standard of Review

The court will grant a rehearing "only in limited circumstances, including [where there has been] 1) an error or irregularity, 2) a serious evidentiary flaw, 3) the discovery of new evidence which even a diligent party could not have discovered in time, or 4) an accident, unpredictable surprise or unavoidable mistake which impaired a party's ability to adequately present its case." Target Stores v. United States, __ CIT __, 471 F. Supp. 2d 1344, 1347 (2007) (citing Kerr-McGee Chem. Corp. v. United States, 14 CIT 582, 583 (1990)); Salmon Spawning & Recovery Alliance v. Basham, Slip Op. 07-69, 2007 WL 1362434, at *1 (CIT May 9, 2007), rev'd in part on other grounds, 532 F.3d 1338 (Fed. Cir. 2008). The court will not grant such a motion "merely to give a losing party another chance to re-litigate the case or present arguments it previously raised." Basham, 2007 WL 1362434, at *1.

Both motions, by alleging "error" in the court's July 3 opinion, invoke only the first ground for rehearing.  Applying this standard, the court will address each motion in turn.

## United States' Motion for Reconsideration

The court begins with the government's motion.  Although Totes based its claims on the alleged unconstitutionality of the HTSUS, the government, relying on United States v. Clintwood Elkhorn Mining Co., 553 U.S. __, 128 S. Ct. 1511 (2008), argues that Totes was required to exhaust its administrative remedies by filing a protest with Customs pursuant to 19 U.S.C. § 1514(a) prior to filing its complaint.  The government claims that Clintwood dictates that Totes's failure to file such a protest divests the court of jurisdiction, and that, as a result, the court erred in its July 3 opinion by exercising jurisdiction and must instead dismiss Totes's claim for lack of jurisdiction.

Clintwood, however, is a tax case, and thus was controlled by the applicable provisions of the United States Tax Code. United States v. Clintwood Elkhorn Mining Co., 553 U.S. __, 128 S. Ct. 1511, 1516 (2008).  Title 26 U.S.C. § 7422(a), the Tax Code's jurisdictional provision, states that "[no] suit . . . shall be maintained in any court for the recovery . . . of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund . . . has been duly filed with [the Internal Revenue Service ('IRS')]."  Clintwood held that section 7422(a)'s plain language required the plaintiffs to file a refund claim with the IRS, even though the plaintiff's cause of action was based on a purported constitutional violation. Clintwood 128 S. Ct. at 1516

("Five 'any's' in one sentence and it begins to seem that Congress meant the statute to have expansive reach.").

Although the United States attempts to analogize the Tax Code's section 7422(a) to this Court's jurisdictional statutes, the statutes are clearly distinguishable. Section 7422(a)'s language explicitly and plainly requires administrative exhaustion in all circumstances. In contrast, the statutory provisions which the government invokes here <u>do</u> <u>not</u> affirmatively deny the Court jurisdiction when a plaintiff, that cannot effectively protest its action under 19 U.S.C. § 1514(a) and 28 U.S.C. § 1581(a), fails to exhaust administrative remedies.

Indeed, neither section 1514(a) nor section 1581(a) prevent Totes from proceeding in this case. To begin with, section 1514(a) only applies to "decisions of the Customs Service." Although section 1514(a) states that Customs' "decisions" regarding the "classification and rate and amount of duties chargeable" are "final," unless a protest is filed in accordance with the provisions of other sections of 19 U.S.C. § 1514, there is no Customs "decision" at issue here. Totes challenges the constitutionality of the provisions of the HTSUS itself, and Customs makes no decision in this respect other than to routinely apply the HTSUS categories to imported goods. <u>See</u> <u>Forest Labs., Inc. v. United States</u>, 476 F.3d 877, 883 (Fed. Cir. 2007) (citing <u>Jewelpak Corp. v. United States</u>, 20 CIT 1402, 1409-10, 950 F. Supp.

343, 350 (1996), aff'd, 297 F.3d 1326 (Fed. Cir. 2002)) ("Customs has no authority to alter or amend the duty rates of the tariff schedule because the duty rates are part of the tariff statute enacted by Congress"); Mitsubishi Elec. Am., Inc. v. United States, 44 F.3d 973, 977 (Fed. Cir. 1994) (holding that Customs does not make antidumping "decisions" for section 1514(a) to apply, as Customs simply follows the Department of Commerce's instructions in assessing and collecting certain duties, and thus the court held it lacked section 1581(a) jurisdiction).

This circuit's section 1514(a) case law generally exempts, from otherwise required administrative exhaustion, constitutional challenges to statutory provisions from which Customs has no discretion to deviate. See, e.g., Thomson Consumer Elecs., Inc. v. United States, 247 F.3d 1210, 1215 (Fed. Cir. 2001) (holding constitutional challenges to the Harbor Maintenance Tax ("HMT") exempt from administrative exhaustion requirements); U.S. Shoe Corp. v. United States, 114 F.3d 1564, 1569-71 (Fed. Cir. 1997), aff'd, 523 U.S. 360 (1998) (same). When seeking to challenge a provision over which Customs has no authority or discretion, a plaintiff need not file a protest and then invoke jurisdiction under section 1581(a); such a plaintiff may instead rely upon section 1581(i). Orleans Int'l, Inc. v. United States, 334 F.3d 1375, 1380 (Fed. Cir. 2003) (holding that the Court of International Trade had section 1581(i) jurisdiction over Orleans'

constitutional challenge of import assessments mandated by the Beef

Promotion and Research Act); Pat Huval Rest. & Oyster Bar, Inc. v.

United States, __ CIT __, 547 F. Supp. 2d 1352, 1362-63 (2008) (per

curiam) (constitutional challenge to "Byrd Amendment" allowed under

1581(i)).  This follows from the recognition that, in applying a

statute over which Customs has no authority or discretion, Customs

does not make a "decision" that a plaintiff such as Totes can

protest. See U.S. Shoe, 114 F.3d at 1569 ("Typically, 'decisions'

of Customs are substantive determinations involving the application

of pertinent law and precedent to a set of facts, such as tariff

classification and applicable rate of duty.  Indeed, prior case law

indicates that Customs must engage in some sort of decision-making

process in order for there to be a protestable decision.").  When

there is no Customs "decision" subject to protest, sections 1514(a)

and 1581(a) do not apply, and the Court has jurisdiction under

section 1581(i).[4] See id. at 1569-71.

---

[4] 28 U.S.C. § 1581(i) reads: "In addition to the
jurisdiction conferred upon the Court of International Trade by
subsections (a)-(h) of this section and subject to the exception
set forth in subsection (j) of this section, the Court of
International Trade shall have exclusive jurisdiction of any
civil action commenced against the United States, its agencies,
or its officers, that arises out of any law of the United States
providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation
of merchandise for reasons other than the raising of
revenue;

(continued...)

While 28 U.S.C. § 1581(a) vests the Court with exclusive jurisdiction in "any civil action commenced to contest [Customs'] denial of a protest," at the same time, 28 U.S.C. § 1581(i) vests the Court with "residual jurisdiction." See Thomson Consumer Elecs., 247 F.3d at 1213 (Section 1581(i) is "the court's residual jurisdiction provision").  Generally, the residual jurisdictional provision "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987); see also Nufarm America's, Inc. v. United States, 29 CIT 1317, 1319, 1325, 398 F. Supp. 2d 1338, 1341 (2005).  Because there is no protest remedy for an unconstitutional statute, however, section 1581(a) does not provide the jurisdictional mechanism.  Where a plaintiff wishes to challenge the tariff provision itself, and section 1581(a) does not apply, the plaintiff can and must invoke section 1581(i) residual jurisdiction to obtain relief in this Court.

Following this statutory scheme, Totes's section 1514(a)

---

[4](...continued)
(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section...."

protest of Customs' assessments in this case would have been an exercise in futility.   Thus, in <u>Thomson Consumer Electronics</u>, the Federal Circuit held that jurisdiction under 28 U.S.C. § 1581(a) "was not an appropriate vehicle" for Thomson's constitutional challenge of the HMT, and the only appropriate jurisdictional provision for this constitutional challenge was 28 U.S.C. § 1581(i). <u>Thomson Consumer Elecs</u>., 247 F.3d at 1213.   Filing a protest with Customs, a prerequisite to jurisdiction under section 1581(a), "would have been an utter futility" because "collection of the HMT is a purely ministerial task over which Customs exercises no discretion." <u>Id</u>. at 1213, 1215 (citing <u>United States v. U.S. Shoe Corp</u>., 523 U.S. 360, 365 (1998) (noting that Customs, as to its application of the HMT, "'performs no active role,' [] undertakes 'no analysis [or adjudication],' 'issues no directives,' 'imposes no liabilities'; [and,] instead, Customs 'merely passively collects' HMT payments")).   Hence, the Federal Circuit did not require Thomson to protest, under section 1514(a), the constitutionality of the HMT.   Jurisdiction did not lie under 28 U.S.C. § 1581(a), because that provision only provides jurisdiction over a denial of a protest, and residual jurisdiction under 28 U.S.C. § 1581(i) applied. <u>Id</u>. at 1215.   Here, for Totes to file a protest with Customs would have been similarly futile.

Moreover, given the futility of a protest in a case such as this, general principles of administrative law do not tip the scale

in favor of administrative exhaustion.   In Thomson Consumer Electronics, Federal Circuit noted that "[e]xhaustion requirements ensure that an agency and the interested parties fully develop the facts to aid judicial review." Id. at 1214 (citing McKart v United States, 395 U.S. 185, 194 (1969) ("judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise.")).  The court noted other justifications for requiring exhaustion:  practical  notions  of  judicial  efficiency, administrative autonomy, and administrative effectiveness. Id. However, the court held that it was "unsuitable to apply the exhaustion doctrine," as "[t]here are no facts that Customs could have developed regarding whether or not the HMT was constitutional, nor did it have discretion in applying the HMT to Thomson's imports." Id. at 1215.  Customs was "powerless to perform any active role in the determination of the constitutionality of the assessment since it cannot rule on the validity of an Act of Congress." Id.   Thus, requiring Thomson to exhaust its administrative remedies by filing a protest "would be an insistence of a useless formality and inequitable." Id. (citing U.S. Cane Sugar Refiners' Ass'n v. Block, 3 CIT 196, 201, 544 F. Supp. 883, 887 (1982)).

Similar principles prevail here because the constitutional issue that Totes raises is not amenable to administrative

determination.   Totes's complaint raises only a constitutional challenge to the HTSUS.  Customs, however, has no authority to make any decision regarding HTSUS constitutionality and can only "simply passively assess [the HTSUS] and collect" the required tariff. Id. (citing U.S. Shoe Corp., 523 U.S. at 365); see Forest Labs., Inc. v. United States, 476 F.3d 877, 883 (Fed. Cir. 2007).  As in Thomson Consumer Electronics, Totes can only challenge Subheading 4203.29.30's constitutionality in an action before this Court. Hence, it was not necessary for Totes to protest, under 19 U.S.C. § 1514(a), the constitutionality of HTSUS Subheading 4203.29.30.

Although the government has not specifically articulated its reading of the interaction of the court's jurisdictional statutes in this case, the government appears to re-espouse its previously-held position that has already been rejected by the case law of this circuit.  Specifically, the government contends that, because 28 U.S.C. § 1581(a) is the appropriate basis for jurisdiction, Totes cannot enjoy section 1581(i) residual jurisdiction.

As previously mentioned, however, the law of this circuit is to the contrary.  Furthermore, with regard to administrative exhaustion, cases for which jurisdiction lies pursuant to section 1581(i) proceed under a statutory provision, 28 U.S.C. § 2637(d), which is very different from the Tax Code's jurisdictional provision applied in Clintwood.  Rather, in section 1581(i) cases, while the Court still "shall" require administrative exhaustion, it

does so only "where appropriate," as provided by section 2637(d).
It hardly could be deemed "appropriate" to require Totes to protest
an assessment over which Customs has no discretion.

In essence, the government now attempts to use <u>Clintwood</u> to
have the court overturn Federal Circuit and its own precedent.  We
do not read <u>Clintwood</u> to require such a result.  Accordingly, in
its July 3 opinion, the court correctly exercised jurisdiction
according to 28 U.S.C. § 1581(i). <u>Totes-Isotoner Corp.  v. United</u>
<u>States</u>, __ CIT __, 569 F. Supp. 2d 1315, 1319 (2008).  Therefore,
as the government does not identify error in the court's July 3
opinion, its motion must be denied.

### Totes's Motion for Reconsideration

Totes's motion is also unpersuasive.  Totes insists that the
court's July 3 opinion conflicts with the law of this circuit, as
the opinion improperly imposed a pleading requirement that Totes
"show" gender-based discrimination by demonstrating how the alleged
gender-based classification was interpreted or applied.  According
to Totes, the complaint's pleading of the existence of a gender-
based classification suffices to establish an inference of
unconstitutional discrimination.  However, the court will only
excuse the plaintiff's requirement to demonstrate either
discriminatory intent or that the law at issue actually caused
unconstitutional discrimination after the plaintiff has shown that
the provision is facially discriminatory. <u>See</u> <u>Berkley v. United</u>

States, 287 F.3d 1076 (Fed. Cir. 2002) ("if the Instruction established a [impermissible] classification on its face, no further evidence or inquiry would be required as to how it may have been interpreted or applied"); Lutheran Church-Missouri Synod v. Fed. Commc'n Comm'n, 154 F.3d 487, 492-93 (D.C. Cir. 1998) ("[o]nce a government program is shown to call for [a classification violative of equal protection], the heavy burden to justify it shifts to the government [and the] challenger does not have to show that the program actually caused [discrimination] in the actual case"). Totes has failed to demonstrate an impermissible classification, and thus cannot expect the court to waive the requirement of a demonstration of discriminatory intent.

Despite this well-established equal protection jurisprudence, Totes argues that the Federal Circuit's Berkley decision requires a different result. See Berkley, 287 F.3d 1076. Berkley involved a military pay class action in which individuals, terminated pursuant to the 1993 Reduction in Force, claimed that the formal instructions governing the selection of those subject to termination violated the equal protection guarantee of the Fifth Amendment. Id. at 1081. The challenged instruction mandated a specific process exclusively for the evaluation of female and minority officers:

> Your evaluation of minority and women officers must
> clearly afford them fair and equitable consideration.
> Equal opportunity for all officers is an essential
> element of our selection system.  In your evaluation of

>       the records of minority and women officers, you should be
>       particularly sensitive to the possibility that past
>       individual and societal attitudes, and in some instances
>       utilization of policies or practices, may have placed
>       these officers at a disadvantage from a total career
>       perspective.  The Board shall prepare for review by the
>       Secretary and the Chief of Staff, a report of minority
>       and female officer selections as compared to the
>       selection rates for all officers considered by the Board.

Id.

        Significantly, the Berkley court specifically acknowledged
that "[t]o state a claim for an equal protection violation,
appellants must allege that a government actor intentionally
discriminated against them on the basis of race, national origin or
gender." Id. at 1084 (quoting Hayden v. County of Nassau, 180 F.3d
42, 48 (2d Cir. 1999)).   The Berkley court considered the
challenged instruction there to constitute an example of a facially
discriminatory law or policy, from which the court could imply
discriminatory intent. Id.  In coming to this conclusion, the court
held that the instruction explicitly required different treatment
on the basis of ethnicity or sex:

>       The Instruction at issue . . . provided explicit orders
>       that when the Board members reviewed the records of
>       minority and women officers, "[they] should be
>       particularly sensitive to the possibility that past
>       individual and societal attitudes, and in some instances
>       utilization of policies or practices, may have placed
>       these officers at a disadvantage from a total career
>       perspective."

Id. at 1084-85 (citation omitted).  The court concluded that, due
to its language, the instruction was facially discriminatory
because it "clearly required, on its face, that female and minority

officers were to be evaluated under a different standard than white male officers." Id. at 1088.  In other words, the classification at issue in Berkley applied different standards to different officers based on their sex or ethnicity.

The court also found persuasive "the Instruction's dictate of special consideration for minorities and women [which] was immediately followed by the requirement that the Board prepare a report for review by its superiors." Id. at 1085.  The records of the female and minority officers were to be reviewed with "particular sensitivity" and, while neither formal quotas nor actual numerical goals were set forth in the instruction, persons charged with applying this "sensitivity" were advised that their actions would be reviewed by their superiors. Id at 1088.  The court thus inferred intentional discrimination in the creation of the classification, and the court did not require the officers to make a threshold showing of how the facially discriminatory provisions were interpreted or applied. Id. at 1086-87.

In contrast, the HTSUS is not facially discriminatory; the HTSUS instead merely distinguishes between two similar products based upon the tariff provisions' descriptions of "Men's" or "other" gloves.  Unlike the classification at issue in Berkley, the tariff schedule does not, for example, explicitly order Customs to collect a lower rate of duty when that duty is to be paid by women. While Subheading 4203.29.30 requires Customs to differentiate

between gloves because they are targeted for use by specific genders, this is not sufficient to show facial discrimination. The Berkley court held the instruction in that case to be facially discriminatory because the instruction clearly required people to be treated differently on the basis of gender and race. Totes only alleges that Subheading 4203.29.30 distinguishes between products labeled for consumption by different genders. A product's mere classification based on the anticipated principal use of the good does not inherently mandate that the articles actually be so used, making the classification's effect on purchasers of different genders questionable at best. Notably, any importer of such good, whether male or female, pays the same tariff.

Thus, Totes's allegation is insufficient to show discrimination "on the basis of" sex, as its complaint provides an insufficient basis for the court to make an inference of unconstitutional discrimination. Nothing in the Federal Circuit's opinion in Berkley requires a different result. Accordingly, the court denies Totes's motion.

**Totes's Motion for Certification for Interlocutory Appeal**

In the alternative, Totes asks that the court certify the facial discrimination issue for interlocutory appeal to the Federal Circuit pursuant to 28 U.S.C. § 1292(d)(1). However, before the court certifies an issue for interlocutory appeal: (1) there must be a controlling question of law on which there is substantial difference of opinion; and (2) immediate appeal must materially advance the ultimate termination of the litigation. <u>Volkswagen of Am., Inc. v. United States</u>, 22 CIT 280, 284, 4 F. Supp. 2d 1259, 1263 (1998). Neither condition is met here.

First, disagreement with the court's grant of a motion to dismiss does not establish a "substantial ground for difference of opinion" as required by 28 U.S.C. § 1292(d)(1). <u>See First Am. Corp v. Al-Nahyan</u>, 948 F. Supp. 1107, 1116 (D.D.C. 1996) ("Mere disagreement, even if vehement, with a court's ruling on a motion to dismiss does not establish a 'substantial ground for difference of opinion' sufficient to satisfy the statutory requirements for an interlocutory appeal."). While the precise contours of the pleading standard imposed by <u>Bell Atl. Corp. v. Twombly</u>, __ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007), and applied in the court's July 3 opinion, may not yet be clear, it <u>is</u> clear that Totes's complaint must provide some showing of a purpose or intent to disfavor individuals because of their sex. <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 270 (1993) (pleading

requirements to show gender discrimination "do[] demand, however, at least a purpose that focuses upon women <u>by reason of their sex</u>" (emphasis in original)).  Totes's complaint makes no such showing.

Second, Totes cannot meet the second requirement for an interlocutory appeal, i.e., that such an appeal would materially advance the ultimate termination of the litigation.  Here, the court must consider the extent to which an interlocutory appeal will save "time and expense . . . if the order appealed is found to be in error." <u>United States v. Kingshead Corp.</u>, 13 CIT 961, 962 (1989).  In the case at hand, an interlocutory appeal is unnecessary because the court's July 3 opinion can expeditiously lead to a final judgment. <u>See</u> <u>Retamal v. U.S. Customs & Border Prot.</u>, Slip Op. 06-70, 2006 Ct. Intl. Trade LEXIS 66, at *1 (CIT May 11, 2006) ("Pursuant to this court's slip opinion. . .final judgment was entered, dismissing this action" (citations omitted)), and an interlocutory appeal would neither materially advance the ultimate termination of the litigation nor save time or expense.

The court's July 3 opinion permitted Totes to either amend its complaint or accept judgment of dismissal.  If Totes chooses not to amend its pleadings, the litigation is terminated at that point. Totes is then free to appeal to the Federal Circuit on the issues that it asks this Court to certify.  On the other hand, if Totes chooses to amend its complaint, the matter can proceed to expeditious determination here.

Court No. 07-00001                                               Page 19

Thus, as Totes has failed to demonstrate either a "substantial ground for difference of opinion" or that an immediate interlocutory appeal materially advances the ultimate termination of the litigation, its motion for certification must be denied.

**CONCLUSION**

Accordingly, because the court finds no error or irregularity in its July 3 opinion, both motions for rehearing and reconsideration are denied.  The court's order of August 29, 2008, staying this action, is lifted.  In accordance with that order, Totes may have thirty (30) days within which to file an amended complaint.  If no amended complaint is filed by December 4, 2008, the matter is DISMISSED with prejudice.


                                        /s/ Donald C. Pogue
                                        Donald C. Pogue, Judge

Dated:      November 4, 2008
            New York, New York

SLIP OP. 08-119

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE JANE A. RESTANI, CHIEF JUDGE
          THE HONORABLE DONALD C. POGUE, JUDGE
          THE HONORABLE JUDITH M. BARZILAY, JUDGE

```
------------------------------x
TOTES-ISOTONER CORPORATION,    :
                               :
            Plaintiff,         :
                               :
            v.                 :   Court No. 07-00001
                               :
                               :
UNITED STATES                  :
                               :
            Defendant.         :
------------------------------x
```

AMENDED JUDGMENT

This action having been duly submitted for decision, and this court, after due deliberation, having rendered a decision herein; now, in conformity with that decision, this action is hereby

DISMISSED without prejudice for failure to state a claim.  If no amended complaint is filed by December 4, 2008, the matter is

DISMISSED with prejudice.

/s/ Donald C. Pogue
Donald C. Pogue, Judge

Dated:   November 4, 2008
         New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                         Deputy Clerk